United States District Court
Southern District of Texas
**ENTERED**
August 16, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ABELARDO GONZALEZ, <br> TDCJ #01622682 <br><br> Plaintiff, <br><br> v. <br><br> PONCE TREVINO, *et al.*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 5:20-CV-52 |

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Defendants, Ponce Trevino and Webb County's, motions to dismiss Plaintiff, Abelardo Gonzalez's, First Amended Complaint. (Dkt. Nos. 71 and 72). Having considered the parties' submissions and the applicable law, the Court **RECOMMENDS** that Defendant Trevino's motion to dismiss regarding claim one should be **DENIED**, that Defendant Trevino's motion to dismiss claim two should be **GRANTED** regarding Defendant Trevino in his official capacity and **DENIED** regarding Defendant Trevino in his individual capacity, and that Defendants' motions to dismiss claim three should be **GRANTED**.

### I.   BACKGROUND

Plaintiff Abelardo Gonzalez (TDCJ #1622682) is a state prisoner incarcerated at the McConnell Unit of the Texas Department of Criminal Justice. (Dkt. No. 1–1 at 8). Plaintiff filed a complaint under 42 U.S.C. § 1983, alleging that Defendant Trevino, then the Webb County Jail Commander, improperly retaliated against him while he was incarcerated. *Id.* at 12. Additionally, Plaintiff asserted a state-law defamation

claim against Defendant Trevino, *see id.* at 22–24, civil conspiracy claims against Webb County Sheriff Martin Cuellar, District Attorney Isidro Alaniz, and other unnamed individuals, *see id.* at 27, and sued Webb County under a theory of municipal liability. *Id.* at 29.

This lawsuit was originally filed by Plaintiff in state court on February 19, 2020, and later it was removed to federal court on April 7, 2020. (Dkt. No. 1). On May 20, 2020, United States District Judge Marina Garcia Marmolejo issued an order that dismissed with prejudice Plaintiff's claims against District Attorney Isidro Alaniz, Sheriff Martin Cuellar, and unknown officials, acting in their individual capacity. (Dkt. No. 16 at 8, 11). Plaintiff's retaliation and defamation claims against Defendant Trevino, and his request for injunctive relief against Defendant Webb County remained. *Id.* at 11. Afterward, the Court appointed attorney Nelson S. Ebaugh to represent Plaintiff. (Dkt. Nos. 31 and 42).

Plaintiff filed his First Amended Complaint against Defendants on March 25, 2021 and alleged three claims: (1) a claim under 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment rights against Defendant Trevino; (2) a state law defamation claim against Defendant Trevino; and (3) a *Monell* claim[1] under 42 U.S.C. § 1983 against Defendant Webb County. (Dkt. No. 70). Defendants filed separate motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on April 8, 2021. (Dkt. Nos. 71 and 72). Plaintiff responded in opposition to Defendants' motions to dismiss on April 16, 2021. (Dkt. No. 73).

---

[1] *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) (establishing that a municipality may be held liable for an officer's conduct when a plaintiff can establish that the officer violated the plaintiff's constitutional right, and that the violation resulted from an official policy, unofficial custom, or because of deliberate indifference by the municipality).

Defendants replied to Plaintiff's response on April 23, 2021. (Dkt. No. 74).

## II. DISCUSSION

Defendant Trevino seeks to have Plaintiff's claims dismissed for failure to state a claim regarding claims one and three. As for claim two, Defendant Trevino argues that it should be dismissed because he is entitled to governmental immunity. Defendant Webb County seeks to have Plaintiff's claim three dismissed for failure to state a claim.

### a. Legal Standard

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, "[m]otions to dismiss are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). When considering Rule 12(b)(6) a court must also consider Rule 8(a)(2) which requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This does not require detailed factual allegation, but it does require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In analyzing a motion to dismiss under Rule 12(b)(6), the Court must accept the facts alleged as true and view them in the light most favorable to the plaintiff. *See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). Dismissal is appropriate when the plaintiff fails to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Meaning, Rule 12(b)(6) motions should not be granted unless it appears beyond a doubt that the plaintiff cannot prove a set of facts to support his claim that would entitle

him to relief. *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999) (citation omitted). The question on a motion to dismiss is whether, in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any cognizable claim for relief. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999) (citation omitted).

### b. Procedural Issue – Successive Motions to Dismiss

Regarding Plaintiff's claims one and three, Defendants ask the Court to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Plaintiff responds that Defendants' successive Rule 12(b)(6) motions should be barred and that the filing of an amended complaint does not allow a defendant to file another Rule 12(b)(6) motion to dismiss based on grounds that were available but not raised originally. *See* Fed. R. Civ. P. 12(g)(2).

Rule 12(g)(2) states that a party that makes a motion under Rule 12 must not make a successive motion under Rule 12 "raising a defense or objection that was available to the party but omitted from its earlier motion." However, there are exceptions allowed under Rule 12(h)(2) and 12(h)(3). This includes allowing a defendant to raise the issue of failure to state a claim upon which relief can be granted in certain circumstances—such as in a Rule 7(a) pleading, a Rule 12(c) motion for judgment on the pleading, or at trial. Fed. R. Civ. P. 12(h)(2). While the defense of failure to state a claim is never waived, raising it a successive time technically must be done in an answer, a motion for judgment on the pleadings under Rule 12(c), or at trial. By filing a successive motion to dismiss, Defendants have failed to comply with the requirements of Rule 12(h)(2).

The Court recognizes that, since the defense of failure to state a claim is never waived and will eventually require adjudication, many courts have allowed such a

defense to be asserted in a successive motion to dismiss. *See Doe v. Columbia-Brazoria Independent School District*, 855 F.3d 681, 686 (5th Cir. 2017) (holding that a district court did not abuse its discretion when considering a successive motion to dismiss that raised an argument that could be raised in a Rule 12(c) motion for judgment on the pleadings); *Global Healing Center, LP v. Powell*, No. 4:10-CV-4790, 2012 WL 1709144, at *4 (S.D. Tex. May 15, 2012) (allowing a successive Rule 12(b)(6) motion to dismiss claim that would require adjudication at a later point, had been fully briefed, and there was no issue of delay); *Stoffels ex rel., SBC Concession Plan v. SBC Communications, Inc.*, 430 F.Supp.2d 642, 648 (W.D. Tex 2006) (allowing a successive Rule 12(b)(6) motion claim that could be raised later and did not create a delay); *but see Polar Pro Filters Inc. v. FrogSlayer, LLC*, No. H-19-1706, 2020 WL 1987432, at *4 (S.D. Tex. April 27, 2020) (denying a successive Rule 12(b)(6) motion to dismiss when delay was a concern). The parties have not raised any concern of delay over these issues, and the issues raised in the motions to dismiss have been fully briefed. Therefore, the Court will consider Defendants' motions to dismiss.

### c. 42 U.S.C. § 1983 – Violation of First Amendment

Defendant Trevino argues that Plaintiff has failed to state a claim upon which relief can be granted because alleging that he was falsely accused by Defendant Trevino as retaliation is not a violation of his constitutional rights. Defendant Trevino argues that the adverse retaliatory actions Plaintiff complains of, such as cell searches and limiting of mail privileges, must be considered under the Fourth Amendment, and that the Fourth Amendment was not violated by those actions.

For Plaintiff to state a valid claim for retaliation, he must establish (1) that a specific constitutional right was invoked; (2) that the defendant intended to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) that, but for the defendant's retaliatory motive, the adverse act would not have happened. *See Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999) (citation omitted); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Conclusory allegations of retaliation are not enough to prevent dismissal of the claim. *Woods*, 60 F.3d at 1166. "The inmate must produce direct evidence of motivation or . . . 'allege a chronology of events from which retaliation may be plausibly inferred.'" *Id.* (citation omitted). Moreover, a prisoner "must allege more than *de minimis* retaliation to proceed with such a claim." *Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006). To satisfy the *de minimis* test an inmate must allege adverse acts that rise "to the level of that which would deter the exercise of a constitutional right." *Id.* at 686 (citing *Davidson v. Chestnut*, 193 F.3d 144, 149–50 (2d Cir. 1999).

Plaintiff's First Amended Complaint alleges that Defendant Trevino retaliated against Plaintiff for exercising his First Amendment right of access to the courts. (Dkt. No. 70 at 5–6). Plaintiff alleges that in 2017 he filed a state-court action against Defendant Trevino and obtained a default judgment against him in January 2019. In February 2019, Plaintiff mailed a letter to Defendant Trevino informing him of the default judgment. Plaintiff alleges that upon receipt of the letter Defendant Trevino retaliated by sending an email to Sergeant Joe Mireles of the McConnell Unit that falsely accused Plaintiff of mailing a controlled substance to him. This resulted in Plaintiff having to speak to Sergeant Mireles as part of an investigation in that matter.

Due to Sergeant Mireles's role in the Security Threat Group, which investigates gang activity in the prison, an inmate who speaks to him is viewed as a snitch. Plaintiff's cell was searched multiple times over the next several days, and he was restricted from sending legal correspondence except to his attorney of record—which he did not have. Plaintiff was then required to report to Sergeant Mireles a second time. The multiple meetings resulted in Plaintiff being threatened by other inmates and being physically assaulted by another inmates. Plaintiff filed a grievance form, but the warden's office never interviewed him regarding the matter.

Defendant Trevino relies on *Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999), to argue that a false accusation that results in the adverse actions of being investigated, subjected to multiple cell searches, and having mail privileges restricted are not cognizable retaliation claims under section 1983. *Colson* evaluated whether alleged false accusations, criticisms, and a recall petition rose to the level of a constructive adverse employment action, either individually or as a campaign of retaliatory harassment, that amounted to a First Amendment violation and held that they did not. *See Colson*, 174 F.3d at 511, 513–14. Moreover, *Colson* was specifically looking at actions against an elected official. Plaintiff's situation is different due to him being an inmate.

Prison officials may not retaliate against an inmate for exercising their right of access to the courts. *Woods*, 60 F.3d at 1164. In the context of retaliation against an inmate under section 1983, an inmate must allege "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324–25. Plaintiff (1) identifies that exercising his right of access to the courts was at issue, (2) alleges that

due to the declaratory judgment obtained against Defendant Trevino, Plaintiff was falsely accused of mailing a controlled substance to Defendant Trevino, (3) as a result of Defendant Trevino's false accusations Plaintiff was subjected to an investigation, cell searches, having mail privileges restricted, and by being placed in a more dangerous prison environment, and (4) that but for Plaintiff exercising his right of access to the courts and mailing the declaratory judgment to Defendant Trevino the alleged adverse acts would not have occurred.

"The purpose of allowing inmate retaliation claims under section 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights." *Morris*, 449 F.3d at 686 (citation omitted). *Morris* addressed retaliation by a prison official. *See Id.* at 683. Defendant Trevino argues that *Morris* is not applicable here because he was employed by Webb County and was not a prison official or an agent of the Texas Department of Criminal Justice. However, Plaintiff has alleged that Defendant Trevino was the Webb County Jail Commander at the time of the alleged violations that occurred at the Texas state prison McConnell Unit, located in Bee County, which is run by the Texas Department of Criminal Justice. Defendant Trevino's status as a jail commander, a person who operates and maintains a jail, at a separate facility at the time of the alleged events is sufficiently analogous for purposes of applying *Morris*, which considered retaliation by a prison official against an inmate exercising his First Amendment right.

Plaintiff asserts that he has satisfied the *de minimis* test established in *Morris* when he alleged retaliation that subjected him to a more dangerous prison environment. Courts have held that transfer to a more dangerous prison is serious enough to satisfy the *de minimis* test required to support a sufficiently adverse retaliatory act needed to

satisfy a section 1983 claim. *See Morris*, 449 F.3d at 687; *Parker v. Carpenter*, 978 F.2d 190, 192–93 (5th Cir. 1992) (holding that transferring a pretrial detainee to a more violent section of the jail after a verbal altercation with jail personnel was cognizable under a section 1983 claim).

Here, Plaintiff does not allege being transferred to another section or prison, but he does allege being threatened and physically assaulted. In *Morris*, Morris alleged that transferring him from the Telford Unit to the Terrell Unit was retaliation because it was "common knowledge that the Terrell Unit is a harsher environment for prisoners than is the Telford Unit," and the court held that being placed in a more dangerous prison environment satisfies the *de minimis* test. *See Morris*, 449 F.3d at 686–87. Similarly, Plaintiff has alleged that an inmate who speaks to a member of the Security Threat Group is viewed as a snitch, and Plaintiff alleges he was not only in a more dangerous prison environment due to threats but that he was also physical harmed. Being labeled as a snitch and subjected to threats and physical harm as a result of the exercise of constitutional rights may deter an inmate from the future exercise of those rights, so the *de minimis* test is satisfied. *See United States v. Henderson*, 565 F.2d 900, 905 (5th Cir. 1978) (recognizing that being labeled a snitch in a prison environment can pose a threat to an inmate's health and safety).

In *Hart v. Hairston*, 343 F.3d 762 (5th Cir. 2003), a retaliation claim where the alleged adverse act was twenty-seven days of commissary and cell restrictions, the plaintiff satisfied the *de minimis* test. Here, Plaintiff alleges that he was subjected to

"several days" of having his cell searched and that since March 21, 2019[2] he is "no longer permitted to mail sealed, uninspected special or media correspondence," and he is "no longer permitted to send any legal correspondence, with the exception of correspondence to [his] attorney of record." Plaintiff states that since he has not had an attorney of record in this case until October 2, 2020, he was precluded from using the prison's legal-mail system in this case until recently, and that the restrictions preclude him from using the legal-mail system in connection with other legal matters unrelated to this case.[3] This would mean that Plaintiff has had mail restrictions that have lasted between one to two years up to at least the filing of his First Amended Complaint.

*Hart* looked to other circuits for guidance on the required amount of retaliation necessary to support a section 1983 claim by an inmate and agreed that the adverse acts must be ones that "would chill or silence a person of ordinary firmness from future First Amendment activities." *See Morris*, 449 F.3d at 685 (citation omitted). Being restricted from sending any legal correspondence, except to an attorney of record, for over a year due to exercising one's constitutional rights may be sufficient to satisfy the *de minimis* test, but because the Plaintiff has already satisfied the test based on the dangerous prison environment, there is no need to conclusively determine whether the mail restrictions also satisfy the test for purposes of overcoming Defendant Trevino's motion to dismiss.

---

[2] Plaintiff submitted a copy of the letter from Lorie Davis, Director of the Correctional Institutions Division, and it is dated March 21, 2019. (Dkt. No. 1-1 at 17). In Plaintiff's First Amended Complaint, he states that the letter was dated March 12, 2020. (Dkt. No. 70 at 3).
[3] In an advisory to the Court, Plaintiff swore under penalty of perjury that he was restricted from sending any legal correspondence, except to his attorney of record, Dkt. No. 8, which he did not have until October 2, 2020. (Dkt. No. 42). Plaintiff was still able to file advisories, motions, and letters with the Court in this case. (*See* Dkt. Nos. 3, 5, 8, 9, 10, 11, 12, 13, 14, 17, 22, 23, 28, 29, 33, 34, 38, 40, 47, 50).

Defendant Trevino then argues that, in the alternative, a false accusation could be the basis for malicious prosecution in violation of a plaintiff's First Amendment rights. *See Johnson v. Louisiana Dep't. of Agriculture*, 18 F.3d 318, 320 (5th Cir. 1994) (considering that if the First Amendment protects against malicious prosecution, all the elements of that common law tort must still be established). However, Plaintiff does not allege a malicious prosecution, nor does he allege the elements to establish a malicious prosecution. Therefore, the Court does not need to address this hypothetical.

Similarly, Defendant Trevino argues that a false accusation could be the basis for a malicious prosecution in violation of Plaintiff's Fourth Amendment rights. Admitting that Plaintiff has not raised a claim under the Fourth Amendment, Defendant Trevino then analyzes *Hudson v. Palmer*, 468 U.S. 517 (1984), for the proposition that Plaintiff, as an inmate, enjoys only limited protections under the Fourth Amendment that do not protect him against cell searches or having restrictions placed on his mail privileges. *See Hudson*, 468 U.S. at 529 (discussing how the curtailment of certain rights can be necessary to accomplish institutional needs and objectives). However, because Plaintiff has not alleged a violation of his Fourth Amendment rights there is no need for the Court to address this hypothetical either. Instead, Plaintiff has alleged retaliation against him for exercising his First Amendment right to access the courts and it is the *de minimis* test in *Morris* that must be satisfied.

As part of the requirements Plaintiff must satisfy to state a claim for retaliation, an inmate must present direct evidence of motive or "allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (citation omitted). For purposes of overcoming a motion to dismiss, Plaintiff does set forth a chronology of

events from which retaliatory animus on the part of Defendant Trevino could be inferred.[4] Accordingly, the Court **RECOMMENDS** that Defendant Trevino's motion to dismiss claim one of Plaintiff's First Amended Complaint be **DENIED**.[5]

### d. State-Law Defamation

Defendant Trevino argues that this claim should be dismissed because he is sued in his official capacity which entitles him to governmental immunity. Additionally, he argues that because Texas has not waived governmental immunity for the tort of defamation Plaintiff's defamation claim should be dismissed. Plaintiff has sued Defendant Trevino individually and in his official capacity for defamation.

When a suit is brought against a governmental official in his official capacity, the suit is essentially a suit against the government. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). When determining questions of state law, "federal courts look to final decisions of the highest court of the state." *Transcon. Gas Pipe Line Corp. v. Transp Ins. Co., Ltd.*, 953 F.2d 985, 988 (5th Cir. 1992). Sovereign immunity protects a state from suit unless it consents to being sued. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Governmental immunity provides similar protections to subdivisions of the state, which includes counties. *See id.* In Texas, a governmental unit

---

[4] The chronology of events in Plaintiff's case are as follows: Plaintiff filed a state-court action against Defendant Trevino and obtained a default judgment against him in January 2019. In February 2019, Plaintiff mailed a copy of the default judgment to Defendant Trevino. That same month, Defendant Trevino emailed Sergeant Mireles stating he received mail that contained a controlled substance from Plaintiff, and an Offense/Incident Report, No. 2019000282, was generated for a prohibited substance/item in a correctional facility based on a letter addressed to Defendant Trevino from Plaintiff. A week later, Plaintiff alleges that Sergeant Mireles told him that it was "odd" that Defendant Trevino did not want to press charges. Plaintiff further alleges that because of Defendant Trevino's actions Plaintiff's cell was searched for several days, he faced a more dangerous prison environment due to threats and physical harm, and he was placed on Special Legal Correspondence Restriction beginning on March 21, 2019. The alleged adverse acts occurred immediately following Plaintiff obtaining and mailing a default judgment against Defendant Trevino.

[5] Neither party raises or addresses any issue as to whether Plaintiff's access to the courts aspect of his claim is a permissible one, so that is not considered here. *See Lewis v. Casey*, 518 U.S. 343, 355 (1996).

is immune from suit and liability unless the state consents. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 686 (Tex. 1999). Governmental immunity from suit defeats a court's subject matter jurisdiction. *Id.* When suing a governmental unit, the plaintiff must affirmatively show that the court has jurisdiction by alleging a valid waiver of immunity. *See Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

Plaintiff has not alleged a waiver of immunity in this instance and concedes that governmental immunity precludes Plaintiff's state law claim for defamation against Defendant Trevino in his official capacity, but Plaintiff argues that his claim against Defendant Trevino in his individual capacity should be allowed to proceed. Defendant Trevino relies on *Zellers v. Cortez*, 13-09-00596-CV, 2010 WL 1839280, at *3–*4 (Tex. App.—Corpus Christi May 6, 2010), for the notion that Texas courts look to the "course of the proceedings" to determine the nature of the liability the plaintiff is seeking, regardless of how Plaintiff has labeled the parties. This is only true in situations where a plaintiff has not specified the capacity in which a person is being sued. *See Nueces County v. Ferguson*, 97 S.W.3d 205, 215 (Tex. App.—Corpus Christi 2002) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 n.14 (1985)). Plaintiff has sued Defendant Trevino in his official capacity and in his individual capacity, so there is no need to look at the course of the proceedings to determine under which capacity Defendant Trevino has been sued.

Because Defendant Trevino's only argument presented as to this claim is that Plaintiff's suit should be considered only against Defendant Trevino in his official capacity, where Plaintiff concedes he is entitled to governmental immunity, despite being

sued in his official and individual capacity, the Court **RECOMMENDS** that the motion to dismiss claim two be **GRANTED** regarding Defendant Trevino in his official capacity and **DENIED** regarding Defendant Trevino in his individual capacity.

### e. 42 U.S.C. § 1983 – *Monell* claim

Defendant Webb County argues that Plaintiff has failed to properly allege the three prongs necessary to proceed on a claim seeking to impose municipal liability under a section 1983 claim against a governmental entity. Defendants Webb County and Trevino argue that Plaintiff has not established a constitutional violation for purposes of this claim, so there is no claim for relief that may be granted.

Under section 1983, municipal liability is not extended merely on a *respondeat superior* basis. *Monell v. Dep't of Soc. Servs. Of N.Y.C.*, 436 U.S. 658, 691 (1978). A plaintiff must show that "(1) a policymaker (2) promulgates a policy or custom (3) that is the 'moving force' of a violation of constitutional rights." *Blanchard-Daigle v. Geers*, 802 Fed.App'x 113, 116 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694). Usually an official policy exists as "written policy statements, ordinances, or regulations," but it may also exist as a widespread practice that constitutes a custom that represents municipal policy. *See James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009). That policy must also be unconstitutional or adopted with indifference to the fact that it would violate the constitution. *Id.* When alleging deliberate indifference from a single incident, "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003). A custom or policy may be proved by showing "a pattern of unconstitutional conduct" on the part of municipal actors, or where "a final

policymaker took a single unconstitutional action." *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citations omitted).

Regarding the "policymaker" prong, a plaintiff does not have to plead the specific identity of the policymaker. *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 283–84 (5th Cir. 2016). A plaintiff must name the entity that acted under the policy as a defendant, but only needs to "allege facts that show an official policy, promulgated or ratified by the official policymaker, under which the municipality is said to be liable." *Id.* at 284, 284 n.4. Meaning, to survive a motion to dismiss, a plaintiff must plead facts that sufficiently connect the policymaker to the allegedly unconstitutional policy. *See id.* at 285–86.

Here, Plaintiff alleges that Defendant Trevino, as final policymaker, took a single unconstitutional action—retaliating against Plaintiff's exercise of his First Amendment right of access to the courts. "[I]t has long been recognized that, in Texas, the county Sheriff is the county's final policymaker in the area of law enforcement." *Turner v. Upton County, Tex.*, 915 F.2d 133, 136 (5th Cir. 1990) (citations omitted). When considering the care of inmates, Texas law provides that "[t]he sheriff of each county is the keeper of the county jail." Tex. Loc. Gov't Code § 351.041(a). "The sheriff may appoint a jailer to operate the jail and meet the needs of the prisoners, but the sheriff shall continue to exercise supervision and control over the jail." *Id.* at § 351.041(b). This shows that the Webb County Sheriff is the final policymaker for the operation of the Webb County Jail, not Defendant Trevino. Thus, this theory fails because the alleged custom or policy cannot be proven without directly connecting the final policymaker to the unconstitutional action and sufficient facts have not been alleged to do so.

Lastly, Plaintiff alleges a theory of ratification, that the Webb County Sheriff ratified Defendant Trevino's retaliation. Ratification requires that the policymaker "knowingly [approves] a subordinate's actions and the improper basis for those actions." *Covington v. City of Madisonville, Tex.*, 812 Fed.App'x 219, 228 (5th Cir. 2020) (citation omitted). Plaintiff only alleges that "upon information and belief, the Webb County's sheriff ratified Trevino's false accusation." In Plaintiff's briefing on Defendants' motions to dismiss he adds that this specific instance would have led a reasonable supervisor to act, but it resulted in no action taken regarding Defendant Trevino's actions. Considering these allegations and arguments combined, it is not enough to sufficiently connect a policymaker to the unconstitutional behavior and survive Defendants' motions to dismiss. *But see Covington*, 812 Fed.App'x. at 228–29 (discussing how the plaintiff argues that a chief of police's failure to intervene, coverup of an investigation, failure to provide audio recording related to an investigation, failure to properly label and investigate a relevant statement, and alleging failure to supervise was sufficient to survive a motion to dismiss).

While Plaintiff has named Webb County as the defendant regarding this claim, he has failed to plead facts that sufficiently connect the policymaker, under either a theory of a final policymaker taking a single unconstitutional action or a theory of ratification, to an unconstitutional custom or policy. Due to that failure, the Court need not address Defendants' arguments regarding the sufficiency of the alleged unconstitutional policy. Accordingly, the Court **RECOMMENDS** Defendants' motions to dismiss Plaintiff's claim three be **GRANTED**.

### III.   CONCLUSION

For these reasons, the Court **RECOMMENDS** that Defendant Trevino's motion to dismiss regarding claim one, Dkt No. 72, should be **DENIED**, that Defendant Trevino's motion to dismiss claim two, Dkt No. 72, should be **GRANTED** regarding Defendant Trevino in his official capacity and **DENIED** regarding Defendant Trevino in his individual capacity, and that Defendants' motions to dismiss claim three, Dkt. Nos. 71 and 72, should be **GRANTED**.

### Warnings

The parties may file objections to this Report and Recommendation, unless they waive the right to do so. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report—or the party's waiver of the right to do so—shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The Clerk is directed to send a copy of this Report and Recommendation to all parties.

**SIGNED** on August 16, 2021.

                                                        Christopher dos Santos
                                                        United States Magistrate Judge